UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>JONATHAN EAGLE ELK,<br><br>　　　　　　　　Defendant. | 5:23-CR-50167-KES<br><br><br>ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA |

Defendant, Jonathan Eagle Elk, moves pro se[1] under Federal Rule of Criminal Procedure 11(d)(2)(B) to withdraw his guilty plea. Dockets 38, 49. The government opposes the motion. Docket 48. The court issues the following order.

**BACKGROUND**

On October 26, 2023, a federal grand jury indicted Eagle Elk on two counts of Second-Degree Murder in violation of 18 U.S.C. §§ 1153 and 1111(a). Docket 1. On July 23, 2024, the government filed a Superseding Information

---

[1] Eagle Elk is represented by counsel in this matter. *See* Docket 47. The "court has no obligation to entertain pro se motions filed by a represented party." *United States v. Pate*, 754 F.3d 550, 553 (8th Cir. 2014) (quoting *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001)). But the court exercises its discretion and takes up Eagle Elk's motions. *See United States v. Wilbourn*, 2011 WL 3426185, at *6 (D.S.D. Aug. 5, 2011), *aff'd,* 478 F. App'x 332 (8th Cir. 2012) (exercising discretion to consider a pro se motion filed by a represented criminal defendant); *United States v. Okeayainneh*, 2011 WL 2457395, at *8 (D. Minn. May 13, 2011).

charging Eagle Elk with one count of Second-Degree Murder in violation of 18 U.S.C. §§ 1153 and 1111(a) and one count of Voluntary Manslaughter in violation of 18 U.S.C. §§ 1153, 1112 and 2. Docket 19. The day prior, the government filed a plea agreement and a factual basis statement signed by both Eagle Elk and his attorney, indicating Eagle Elk's intention to plead guilty to both counts in the Superseding Information. Dockets 15-16. The plea agreement correctly articulated the possible minimum and maximum penalties associated with Eagle Elk's charges. Docket 15 at 2-3.

On July 24, 2024, the court held a change of plea hearing. Docket 22. At the hearing, Eagle Elk was placed under oath and participated in a Rule 11 dialogue with the court. Docket 45 at 2-3. As part of the court's discussion with Eagle Elk, the court asked Eagle Elk if he received a copy of the Superseding Information, to which Eagle Elk replied "yes." *Id.* at 3-4. Eagle Elk confirmed he understood that he was charged in Count 1 with Second-Degree Murder and charged in Count 2 with Voluntary Manslaughter. *Id.* at 4-5.

Thereafter, the court informed Eagle Elk of his right to hire his own attorney or have the court appoint him one. *Id.* at 5. The court asked Eagle Elk if he wanted his current attorney, Mr. Parr, to continue representing him. *Id.* Eagle Elk responded, "yeah." *Id.*

Next, the court advised Eagle Elk of his right to be charged by indictment—stating that unless he waived the right, he could not be charged with a felony unless a grand jury, made up of at least 16 people, hears the evidence and finds that there is probable cause to believe he committed the

crimes. *Id.* at 5-6. The court asked whether Eagle Elk had discussed a waiver of indictment with his attorney and whether Eagle Elk understood his right to be indicted by the grand jury. *Id.* at 6. Eagle Elk responded affirmatively to each question. *Id.* Eagle Elk denied that he had been coerced or threatened in any way to waive indictment. *Id.* at 7. But when asked whether he wanted to waive his right to indictment, he responded, "no" and indicated he wanted to discuss the issue with his attorney. *Id.* The court allowed Eagle Elk and his attorney to speak for a time, then again reminded Eagle Elk of what the right to indictment entails. *Id.* at 7-8. The court repeated its previous questions to Eagle Elk, and this time Eagle Elk stated he wanted to give up his right to be indicted by a grand jury. *Id.* at 8. The court asked Eagle Elk's attorney if he was aware of any reason that Eagle Elk should not waive the right. *Id.* Counsel said, "No." *Id.* Eagle Elk then signed a form indicating waiver of indictment. *Id.* The court found the defendant's waiver to be knowing and voluntary. *Id.* at 8-9. The court proceeded to the change of plea portion of the hearing. *Id.* at 9.

When asked if he had the opportunity to discuss the charge and his case in general with his lawyer, Eagle Elk said "yes." *Id.* Eagle Elk also confirmed that he was fully satisfied with the counsel, representation, and advice his attorney had provided. *Id.*

The court then asked Eagle Elk if he had reviewed the plea agreement and plea agreement supplement with his lawyer before he signed it, to which Eagle Elk responded, "Yes." *Id.* In answering subsequent questions posed by the court, Eagle Elk stated that the documents accurately represented the

3

entirety of his agreements with the government, and he understood everything in the documents. *Id.* at 9-10. Eagle Elk also said that no one had made any promises to him to make him plead guilty, no one forced him to plead guilty, and no one threatened him to make him plead guilty. *Id.* at 10-11.

The court ensured that Eagle Elk understood that the plea agreement and the plea agreement supplement are merely recommendations to the court, and the court is free to "reject those recommendations without allowing [Eagle Elk] to withdraw [his] plea of guilty" and that the court "could sentence [him] more severely than [he] anticipate[s]." *Id.* at 10. The court then asked Eagle Elk if he was pleading guilty of his own free will because he was guilty, to which Eagle Elk replied, "Yes." *Id.* at 11.

The court explained to Eagle Elk that by pleading guilty, he would be giving up some of his rights. *Id.* Eagle Elk indicated that he understood he might lose those rights by pleading guilty. *Id.* The court then went over the mandatory minimum and possible maximum penalties that Eagle Elk would face if he did plead guilty. *Id.* at 11-12. Eagle Elk was informed that Count 1 carried a maximum term of imprisonment up to life, a fine of $250,000 (or both fine and imprisonment), 5 years of supervised release, and a 5-year term of imprisonment upon revocation. *Id.* As to Count 2, Eagle Elk was informed he would face up to 15 years in prison, a $250,000 fine (or both fine and imprisonment), 3 years of supervised release, and a 2-year term of imprisonment upon revocation. *Id.* at 12. Eagle Elk was also told there was a $100 special assessment to the victim's assistance fund for each charge and

restitution was also possible. *Id.* at 11-12. Eagle Elk confirmed that he understood the maximum possible penalties. *Id.* at 12.[2]

The court explained that when deciding Eagle Elk's sentence, it would first look to Eagle Elk's advisory guideline range. *Id.* Eagle Elk confirmed that his attorney had gone over what he believed the advisory guideline range would be. *Id.* at 12-13. The court explained that it could not determine the guideline range until probation prepared Eagle Elk's presentence report and the court ruled on any objections to the report, raising the possibility that the range could be different than what Eagle Elk expected. *Id.* at 13. Eagle Elk stated he understood. *Id.*

Next, the court informed Eagle Elk that he had the right to plead not guilty and had the right to a trial by jury where he would be presumed innocent, and the government would have to prove all of the allegations in the Superseding Information beyond a reasonable doubt. *Id.* at 14. Eagle Elk acknowledged that by pleading guilty, he understood that he would give up these rights and there would not be a trial. *Id.* at 15. The court described each element that the government would have to prove if the case did go to trial. *Id.* at 15-16. Eagle Elk then indicated that he read the factual basis statement before he signed it, and that everything in it was the truth. *Id.* at 16-17. The

---

[2] This interaction was the second time during the hearing that Eagle Elk was informed of the maximum possible penalties associated with his charges. *Id.* at 4-5. At the beginning of the hearing, the court instructed the government to recite this information. *Id.* at 4. At that time, Eagle Elk also stated he understood the maximum penalties. *Id.* at 4-5.

5

court noted that it reviewed the factual basis statement and found that it established an independent factual basis for Eagle Elk's guilty pleas. *Id.* at 17.

Eagle Elk was then asked by the court, "How do you plead to the charge in Count [1] of the Superseding Information that charges you with second-degree murder, guilty or not guilty?" *Id.* at 18. Eagle Elk responded, "Guilty." *Id.* Next, the court asked, "And how do you plead to Count [2] that charges you with voluntary manslaughter, guilty or not guilty?" *Id.* Again, Eagle Elk responded, "Guilty." *Id.*

The court then found that Eagle Elk was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that his guilty pleas were "knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of both offenses." *Id.* The court accepted Eagle Elk's guilty pleas and found him guilty of both offenses. *Id.*

Following the court's acceptance of Eagle Elk's guilty pleas, the court informed Eagle Elk when his sentencing would be held and explained the process for preparing the draft and final presentence report, making objections, and submitting letters to the court. *Id.* at 18-20.

The probation officer filed the draft presentence report on August 29, 2024. Docket 25. The government filed written objections to the draft presentence report on September 6, 2024. Docket 26. The final presentence report was filed on September 25, 2024, and the government's attorney filed a motion for upward variance on October 1, 2024. Dockets 27-28.

On October 4, 2024, Eagle Elk's former attorney filed a motion to continue Eagle Elk's sentencing until late November or early December 2024 so Eagle Elk could be evaluated by Dr. Manlove. Docket 29. The court granted the motion and set the sentencing for December 20, 2024. Dockets 31-32.

On November 14, 2024, Eagle Elk moved pro se to withdraw his guilty plea. Docket 38. The government opposes the motion, arguing that Eagle Elk does not have a fair and just reason for withdrawing his plea. Docket 48. Eagle Elk then filed a second motion to withdraw. Docket 49.

## LEGAL STANDARD

Under Rule 11(d), a defendant may move to withdraw his guilty plea, prior to sentencing, if there is a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). While the "fair and just" standard is liberal, it does not create an automatic right to withdraw a guilty plea. *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005). Even if the defendant shows there is a fair and just reason to withdraw the plea, the "court must consider whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Johnson*, 715 F.3d 1094, 1103 (8th Cir. 2013) (citation omitted). But if the defendant does not demonstrate a "fair and just reason" to withdraw his plea, the court does not need to consider the three factors. *Id.* Ultimately, "[t]he defendant bears the burden of proving why one of the recognized justifications should permit a withdrawal of what he had solemnly made under oath." *Smith*, 422 F.3d at 723

7

(citations omitted); *see also United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007) ("A guilty plea is a solemn act not to be set aside lightly.") (citation omitted). "Post-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea." *United States v. Davis*, 583 F.3d 1081, 1089 (8th Cir. 2009) (internal quotation marks omitted). " '[A] defendant has no absolute right to withdraw a guilty plea before sentencing,' and the decision to allow or deny the motion remains within the sound discretion of the trial court." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 (8th Cir. 1989)).

## DISCUSSION

Eagle Elk moves to withdraw his plea because he claims that he did not understand what he was signing when he signed the plea agreement. Docket 38; Docket 49. Eagle Elk asserts that he signed the agreement because he was scared and that he felt like his attorney had been pushing him to plead, which frustrated Eagle Elk. Docket 38. Further, Eagle Elk claims that he "can beat one or both charges." Docket 49.

None of Eagle Elk's reasons rise to the level of a "fair and just" reason for allowing him to withdraw his plea. Although Eagle Elk now maintains that he did not understand the contents of the plea agreement, he stated otherwise while under oath during his change of plea hearing. Docket 45 at 10. In response to the court's questions, Eagle Elk stated that he not only understood the contents of the plea agreement and the plea supplement, but he also had

8

discussed the documents with his attorney. *Id.* at 9-10. In short, the record does not reflect any indication that Eagle Elk did not understand the plea agreement or the charges against him. *See generally* Docket 45.

Moreover, the court meticulously went through the majority of the plea agreement with Eagle Elk when engaging in the Rule 11 dialogue during the hearing. *See generally* Docket 45. The court informed Eagle Elk of the maximum penalties he would face upon pleading guilty, the rights he was giving up—including his right to trial and appeal rights—and the government's promise to dismiss the original indictment. *Id.* at 11-13, 17-18. Eagle Elk stated he understood all of the court's exposition. *Id.* The court also confirmed that Eagle Elk understood the elements the government would have to prove beyond a reasonable doubt at trial. *Id.* at 14-16.[3]

Similarly, Eagle Elk's contention that he was pressured by his attorney to enter a plea is not supported by the record. *See* Dockets 38, 49. At the change of plea hearing, Eagle Elk confirmed that he was "fully satisfied with the counsel, representation, and advice" his attorney had provided and that no one had threatened or coerced him into entering the plea agreement. Docket 45 at 9-10; *see also United States v. Abdullah*, 947 F.2d 306, 312 (8th Cir. 1991) (denying motion to withdraw plea, despite defendant's claim that he was pressured by his attorney because at the change of plea hearing the defendant

---

[3] Notably, Eagle Elk does not argue that he did not understand the proceedings or the court's advisements during the change of plea hearing. *See* Dockets 38, 49. Eagle Elk simply asserts that he did not understand what he was signing when he signed the plea agreement. *See id.*

9

stated he was satisfied with his counsel's performance and "never indicated in any manner that he was under pressure from counsel to plead guilty."). Moreover, "the fact that defendant 'was influenced by his counsel to plead guilty' [is] not enough to justify withdrawal of [a] plea." *United States v. Nichols*, 986 F.2d 1199, 1203 (8th Cir. 1993) (quoting *United States v. Nigro*, 262 F.2d 783, 787 (3d Cir. 1959)). "To the contrary, it is well settled that 'the exercise of mistaken judgment by counsel is not ground to successfully assert involuntariness of a plea' sufficient to amount to a fair and just reason for later withdrawing it." *Id.* (quoting *United States v. Briscoe*, 428 F.2d 954, 956 n.3 (8th Cir. 1970)).

Finally, Eagle Elk's claim that he could "beat one or both of the charges[,]" Docket 49, also does not rise to the level of a "fair and just reason" warranting the withdrawal of his plea. "A conclusory assertion of innocence 'simply does not satisfy [a defendant's] burden of showing a fair and just reason for permit[ting] a withdrawal of what he had solemnly made under oath.'" *United States v. Cruz*, 643 F.3d 639, 643 (8th Cir. 2011) (quoting *United States v. Sampson*, 606 F.3d 505, 508 (8th Cir. 2010) (second alteration in original)). At the change of plea hearing, Eagle Elk asserted under oath that he was guilty of both Second-Degree Murder and Voluntary Manslaughter, as charged in the Superseding Information. Docket 45 at 17-18. Eagle Elk also stated that he read the factual basis statement before signing it and everything in the factual basis statement is the truth. *Id.*; *see also* Docket 16 (factual basis statement detailing Eagle Elk's involvement in two deaths).

Thus, the court finds that Eagle Elk has not met his burden of demonstrating a fair and just reason to withdraw his plea of guilty. *See United States v. Osei*, 679 F.3d 742, 747 (8th Cir. 2012) (finding no fair and just reason to withdraw a plea existed despite defendant's claim that his "pleas were predicated on his attorney's urgings and direction, he misunderstood the parties' agreement regarding relevant conduct for sentencing, and he demonstrated clear confusion" during the change of plea hearing because defendant "testified clearly to the factual bases of his guilty pleas," "responded coherently when the court asked him whether he had adequately conferred with his attorneys," and "listened and indicated his understanding and acceptance when the court explained to him that his guilty pleas would be final").[4]

## CONCLUSION

Eagle Elk's motions to withdraw his pleas failed to establish a "fair and just" reason to withdraw under Rule 11. Thus, it is

---

[4] Because Eagle Elk failed to make the initial showing, the court need not consider any of the additional factors—the defendant's assertion of innocence, the length of time between the plea and the motion to withdraw, and potential prejudice to the government. *See Johnson*, 715 F.3d at 1103. But it bears mentioning that Eagle Elk waited nearly four months after making his guilty plea to move to withdraw it—nearly a month after the date his sentencing was originally scheduled to take place. *See* Docket 38 (Eagle Elk's motion filed on November 14, 2024); Docket 24 (scheduling order setting Eagle Elk's sentencing for October 10, 2024). Thus, this factor would weigh against withdrawing Eagle Elk's plea. *See United States v. Boone*, 869 F.2d 1089, 1091-92 (8th Cir. 1989) (upholding the district court's denial of a motion to withdraw where the defendant waited two months to bring his motion to withdraw).

ORDERED that Eagle Elk's motions to withdraw his pleas of guilty (Dockets 38, 49) are denied.

Dated December 6, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE